Order Entered.

Patrick M. Flatley
United States Bankruptcy Judge
Dated: Monday, October 30, 2006 4:31:55 PM

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

IN RE:                                           )
                                                 )
KENNETH R. LEE, and                              )    CASE NO. 06-155
PEGGY A. LEE                                     )
                                                 )
        Debtors.                                 )

### MEMORANDUM OPINION

Kenneth and Peggy Lee (the "Debtors") seek to reopen their discharged Chapter 7 bankruptcy case to file two "amended" reaffirmation agreements to replace ones that the court declared to be defective and unenforceable. The Debtors' motion is unopposed, but the court set the motion for a telephonic hearing on September 5, 2006, in Wheeling, West Virginia, to determine whether grounds exist under 11 U.S.C. § 350(b) to reopen a case for the purpose of filing reaffirmation agreements after the entry of the Debtors' discharge.

For the reasons stated herein, the court will deny the Debtors' motion to reopen their case because any reaffirmation agreement they might file will be unenforceable pursuant to 11 U.S.C. § 524(c).

### I. BACKGROUND

When the Debtors filed their March 10, 2006 Chapter 7 bankruptcy case, they owned real property in Hegesville, West Virginia, having a stated value of $180,000, and they owned a 2000 Oldsmobile Bravada having a stated value of $7,000. JP Morgan Chase Bank, NA ("Chase") held a first deed of trust on the residence for approximately $77,000. The Bank of Charlestown has a perfected lien in the amount of $7,500 in the Debtors' Bravada. Including these secured debt installment payments, the Debtors allege that their monthly expenses are $4,152, and that their combined net monthly income is

1

$3,452, leaving a monthly shortfall of $700. At the time the Debtors filed their bankruptcy case, they were current on their payments to Chase and the Bank of Charlestown.

On April 28, 2006, the Debtors filed a reaffirmation agreement that was prepared by Chase. The Bankruptcy Clerk's Office observed that the agreement was deficient in that it was not on the the Revised Director's Procedural Form B-240 – it lacked the information required by 11 U.S.C. § 524(k) and (m). The Clerk then issued a Notice of Deficient Filing on May 11, 2006, notifying the Debtors that the agreement's deficiency may cause the agreement to be administratively dismissed if not corrected within twenty days. By June 23, 2006, the agreement's deficiency had not been cured, and the court signed an order that declared the reaffirmation agreement to be defective and unenforceable.

On May 1, 2006, the Debtors filed a reaffirmation agreement prepared by the Bank of Charlestown. That agreement was deficient for the same reasons as the one submitted by Chase, and after following an identical procedure, the court declared the agreement to be defective and unenforceable on June 23, 2006.

On July 28, 2006, the Debtors received their discharge, and the case was closed on the same day. On August 15, 2006, the Debtors filed this motion to reopen their case for the purpose of submitting "amended" reaffirmation agreements that conform to the Revised Director's Procedural Form B-240, and consequently, § 524(k) and (m). In addition to the motion to reopen, the Debtors wrote a letter to the court explaining that "[i]t was never [their] intention to include [their] home or cars in the filing." They further explain that their attorney had advised them not to sign the reaffirmation agreements, but they were attempting to refinance their real property and payoff the existing debts on their home and car, which would result in lowering their payments about $400 per month. The Debtors allege that they cannot obtain the desired refinancing, however, because their personal credit report shows a $0 balance being owed by them on their real property due to the fact that it is "included" in their bankruptcy case. The Debtors' refinancing company is refusing to refinance a $0 balance. According to the Debtors' letter:

> JP MORGAN CHASE instructed me to make the case "active" and send them a new reaffirmation agreement. Once they receive the signed agreement we will go back in good standing with them and this note will be taken off the credit report.

(Doc. No. 31).

2

The Debtors believe that they can obtain the desired refinancing once they have personal liability on their real property debt.[1]

## II. DISCUSSION

The Debtors' counsel argues that cause exists to reopen the Debtors' bankruptcy case for the purpose of filing post-discharge reaffirmation agreements on the basis that the Debtors attempted to comply with the law; the original, albeit defective and unenforceable, reaffirmation agreements were executed before the Debtors' discharge; and Fed. R. Bankr. P. 4008 allows the court thirty days after the entry of a discharge to approve reaffirmation agreements.[2]

Bankruptcy court cases are reopened pursuant to § 350(b) of the Bankruptcy Code, which allows a bankruptcy court to reopen a case "to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b). The decision to reopen a case is within the bankruptcy court's discretion. *E.g.*, *Apex Oil Co. v. Sparks (In re Apex Oil Co.)*, 406 F.3d 538, 542 (8th Cir. 2005); *Hawkins v. Landmark Finance Company (In re Hawkins)*, 727 F.2d 324, 326 (4th Cir. 1984). Before reopening a case, the court should make the threshold determination that one of the three grounds articulated in § 350(b) exists. *See, e.g.*, *In re Hendrix*, No. 99-71718, 2005 Bankr. LEXIS 2159 at *2-3 (Bankr. N.D. Ga. Sept. 7, 2005) (holding that no cause existed to reopen the debtor's completed 60-month plan to address a post-petition default dispute); *In re Root*, 318 B.R. 851, 853-54 (Bankr. W.D. Mo. 2004)

---

[1] The effect of a discharge in Chapter 7 is to turn recourse debts into non-recourse debts; in this respect, a Chapter 7 discharge is more comprehensive than one under Chapter 13 where long term mortgage debts against a debtor's real property remain the personal obligation of the debtor after discharge. *E.g.*, *In re Mosby*, 244 B.R. 79, 85 n.10 (Bankr. E.D. Va. 2000) ("[T]he chapter 13 discharge is less comprehensive than a chapter 7 discharge, since it excludes long-term debts on which the debtor continues to make payments during a plan.").

[2] The Debtors also allege that they had a right to a hearing on the Clerk's determination that their timely filed reaffirmation agreements were deficient. The Clerk's notice of deficient filing stated: "**PLEASE TAKE NOTICE** that failure to correct any deficiency checked below within 20 days from the date of filing may cause your reaffirmation agreement to be dismissed. This administrative determination is subject to judicial review." The Debtors, however, never contested the Clerk's determination of deficiency; consequently, the court was not required to hold a hearing on whether or not a deficiency existed. Indeed, the Debtors concede that the agreements were deficient as determined by the Clerk.

3

(denying a motion to reopen a 13 year-old case for the purpose of attempting to discharge student loans because it would be too difficult to make the determination of undue hardship considering the passage of time); *In re Houston*, 310 B.R. 224, (Bankr. M.D. Ala. 2004) (concluding that no cause existed to reopen a no asset Chapter 7 case to include a creditor). The party seeking to reopen the case has the burden of proof. *In re Cloninger*, 209 B.R. 125, 126 (Bankr. E.D. Ark. 1997).

Cause does not exist to reopen a case for the purpose of filing an unenforceable reaffirmation agreement. *In re Pettet*, 271 B.R. 855, 857 (Bankr. S.D. Ind. 2002) ("[T]he Court must conclude that the Debtor was required to file his agreement with Beneficial prior to receiving his discharge. His failure to do so cannot be cured by reopening the case now and submitting the agreement."). Here, however, the Debtors assert that cause does exist based on their timely filed, albeit defective and unenforceable, reaffirmation agreements, which the Debtors' now seek to amend to cure the stated deficiencies.

The purpose of filing a bankruptcy petition is to "give[] the honest but unfortunate debtor . . . a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt." *Local Loan Co. v. Hunt*, 292 U.S. 234, 244 (1934). A debtor's discharge in bankruptcy, and the corresponding injunction provisions of the Bankruptcy Code are the two primary elements that effectuate that financial fresh start. *Chapman v. Bituminous Ins. Co. (In re Coho Res., Inc.)*, 345 F.3d 338, 342 (5th Cir. 2003). More specifically, a discharge granted under the Bankruptcy Code "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover, or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived . . . ." 11 U.S.C. § 524(a)(2).

Not all debts, however, are subject to the discharge injunction. For example, Congress expressly chose to impair a debtor's fresh start by excepting certain debts from discharge based on the particular nature of the debt or based on a debtor's wrongful conduct. § 523. Also, under certain circumstances, Congress allows a debtor to voluntarily eschew the benefits of a bankruptcy discharge in regard to a single creditor by allowing the debtor and that creditor to enter into a new, enforceable agreement – the consideration for which is based on an otherwise dischargeable debt. § 524(c). To prevent creditor abuse of § 524(c), and to prevent the use of that section from enervating the underlying purpose of the Bankruptcy Code, Congress provided that any "reaffirmation" agreements must meet certain, specified

4

requirements. In short, the agreement must meet six criteria, at least two of which are unsatisfied in this case: (1) it must be made before the granting of a discharge; and (2) the debtor must have received the disclosures required by § 524(k) of the Bankruptcy Code. 11 U.S.C. § 524(c) (1-2).

The reaffirmation agreements that the debtor submitted on April 28, 2006 and May 1, 2006, are pervasively defective. For example, the reaffirmation agreement prepared by Chase is a two page document that fails to, inter alia, (1) disclose the terms "Amount Reaffirmed" and "Annual Percentage Rate" more conspicuously than other terms as required by § 524(k)(2) (in fact, the annual percentage rate was not disclosed at all); (2) contain the statement: "Part A: Before agreeing to reaffirm a debt, review these important disclosures:" as required by § 524(k)(3)(A); (3) contain a summary of the reaffirmation agreement as required by § 524(k)(3)(B); (4) contain the total of any fees and costs accrued as of the date of the disclosure statement as required by § 524(k)(3)(C)(3)(ii); and (5) contain a schedule of the Debtors' income and expenses pursuant to § 524(m) along with a statement on how the Debtors are able to afford to make the reaffirmed payments. The reaffirmation agreement prepared by the Bank of Charlestown is defective for many of the same reasons. The disclosures required by § 524(k) are not advisory; § 524(c) states that a reaffirmation agreement "is enforceable only if . . . the debtor received the disclosures described in subsection (k) at or before the time at which the debtor signed the agreement."

Because the Debtors did not receive the required disclosures, their reaffirmation agreements were not enforceable. The Clerk notified the Debtors of the deficiencies, and when no corrective action was timely taken, the court reviewed the Clerk's determination and entered the order declaring them to be unenforceable.

The fact that the Debtors' are submitting "amended" reaffirmation agreements does not cure the deficiencies. Section 524(c)(2) requires that the Debtors receive the disclosures set forth in subsection (k) *"at or before the time at which the debtor signed the agreement."* (emphasis added). Giving effect to a signed reaffirmation agreement when the disclosures required by § 544(k) have not been made thwarts the Congressional intent to fully inform debtors of their rights and responsibilities in executing the agreement:

> Sec. 203. Discouraging Abuse of Reaffirmation Agreement Practices. Section 203 of the Act effectuates a comprehensive overhaul of the law applicable to reaffirmation agreements. Subsection (a) amends section 524 of the Bankruptcy Code to mandate that certain specified disclosures be provided to a debtor at or before the time he or she signs

5

> a reaffirmation agreement. These specified disclosures, which are the only disclosures required in connection with a reaffirmation agreement, must be in writing and be made clearly and conspicuously. In addition, the disclosure must include certain advisories and explanations. . . . If the debtor is represented by counsel, section 203(a) mandates that the attorney file a certification stating that the agreement represents a fully informed and voluntary agreement by the debtor, that the agreement does not impose an undue hardship on the debtor or any dependent of the debtor, and that the attorney fully advised the debtor of the legal effect and consequences of such agreement as well as of any default thereunder. In those instances where the presumption of undue hardship applies, the attorney must also certify that the debtor is able to make the payments required under the reaffirmation agreement. Further, the debtor must submit a statement setting forth the debtor's monthly income and actual current monthly expenditures. . . .

*Report of the Committee on the Judiciary, House of Representatives, to Accompany S. 256*, H.R. Rep. No. 109-31, Pt. 1, p.57-58, 109th Cong., 1st Sess. (2005). *See also id.* at 2 ("S. 256 also includes various consumer protection reforms. . . . It strengthens the disclosure requirements for reaffirmation agreements (agreements by which debtors obligate themselves to repay otherwise dischargeable debts) so that debtors will be better informed about their rights and responsibilities.").

It appears from the Debtors' argument in this case that the Debtors would have executed the reaffirmation agreements with Chase and the Bank of Charlestown even if they had received the proper disclosures. Indeed, as a general rule, "[a] party may waive any provision, either of a contract or of a statute, intended for his benefit." *Shutte v. Thompson*, 82 U.S. 151, 15 (1873). *See also Globe Grain & Milling Co. v. De Tweede Northwestern & Pacific Hypotheekbank*, 69 F.2d 418, 422 (9th Cir. 1934) (holding that the verbal consent of a secured creditor to dispose of collateral prevented its cause of action for conversion against the debtor when the statute at issue, which required the creditor's written consent, was enacted for the creditor's benefit). With respect to federal statutes, "absent some affirmative indication of Congress' intent to preclude waiver, [it is] presumed that statutory provisions are subject to waiver by voluntary agreement of the parties." *United States v. Mezzanatto*, 513 U.S. 196, 201 (1995) (plea-statement rules may be waived).

The requirements necessary to reaffirm a debt in § 524(c), however, are strictly construed and are not subject to waiver by a debtor. *E.g.*, *Arnhold v. Kyrus*, 851 F.2d 738, 740-42 (4th Cir. 1988) (stating that the stringent requirements of § 524(c) exist to protect a debtor from his own actions and a debtor's

silence at a reaffirmation hearing invalidates the agreement; "the debtor must take specific in court action to preserve the claim of a favored creditor."); *In re Roth*, 43 B.R. 484, 487 (N.D. Ill. 1984) ("[A] reaffirmation agreement is enforceable 'only if' the requirements of §§ 524(c) and (d) are satisfied. Moreover, the creditor has not pointed to any . . . law supporting its argument that this admonitions prerequisite can be waived. To the contrary . . . the failure to admonish the Debtors rendered their reaffirmation agreement unenforceable."); *In re Graham*, 297 B.R. 695, 699 (Bankr. E.D. Tenn. 2003) ("[T]he bankruptcy court lacks jurisdiction to approve any reaffirmation agreement entered into after a debtor's discharge has been granted."); *Airlines Reporting Corp. v. Mascoll (In re Mascoll)*, 246 B.R. 697, 706 (Bankr. D.D.C. 2000) (stating that Congress has provided only two methods for a Chapter 7 debtor to waive the dischargeability of specific debts: § 727(a)(10) and § 524(c); any other waiver is contrary to the Bankruptcy Code); *In re Collins*, 243 B.R. 217, 219 (Bankr. D. Conn. 2000) ("The timing requirement [of Section 524(c)(1)] is imposed as a matter of substantive statutory law and not by procedural rule. While the date for discharge may be delayed in appropriate cases . . . the statutory requirement cannot be waived or extended after discharge occurs."); *Mickens v. Waynesboro Dupont Emples. Credit Union, Inc. (In re Mickens)*, 229 B.R. 114, 118 (Bankr. W.D. Va. 1999) (" '§ 524(c) and (d), except under very limited circumstances, make reaffirmation agreements based on dischargeable debts unenforceable.' 'These requirements are mandatory; and, as they exist to protect a debtor from his or her own bad judgment, the debtor cannot waive them.' "); *Wiley v. Mason (In re Wiley)*, 224 B.R. 58, 81-82 (Bankr. N.D. Ill. 1998) ("§ 524(c) generally bars collection on a discharged debt, and the requirements of § 524 cannot be waived. Failure to comply fully with the reaffirmation requirements renders the debt discharged. To hold otherwise would be to suggest that anytime a debtor enters into a legally deficient reaffirmation agreement and makes payments on that agreement the agreement becomes enforceable. That is simply not so . . . . waiver and ratification are not legally valid defenses . . . ."), *vacated on other grounds*, 237 B.R. 677 (Bankr. N.D. Ill. 1999); *In re Kamps*, 217 B.R. 836, 846 (Bankr. C.D. Cal. 1998) (holding that the requirements of § 524(c) were not subject to waiver by a debtor because they exist to protect a debtor from the debtor's own bad judgment); *In re Catron*, 186 B.R. 194, 196 (Bankr. E.D. Va. 1995) ("In order to waive the discharge of a particular debt, the debt must be reaffirmed pursuant to 11 U.S.C. § 524 regardless of any agreement to except the debt from discharge. A contrary holding

7

would be in direct conflict with the intent of Congress to give debtors a fresh start. Thus, any waiver of the discharge of a particular debt must follow the procedures prescribed in the bankruptcy code and bankruptcy rules.") (footnote omitted).[3]

Finally, the Debtors argue that Fed. R. Bankr. P. 4008 allows approval of a reaffirmation agreement within 30 days of the entry of discharge, and they made their "amended" reaffirmation agreements within 21 days after their discharge. Rule 4008, however, does not help the Debtors.

Rule 4008 provides that "[n]ot more than 30 days following the entry of an order granting or denying discharge . . . and on not less than 10 days notice to the debtor and the trustee, the court may hold a hearing as provided in § 524(d) of the Bankruptcy Code." The Rule further states that "[a] motion by the debtor for approval of a reaffirmation agreement shall be filed before or at the hearing." Rule 4008 merely governs the timing for a hearing on a reaffirmation agreement, it does not create substantive rights in relation to such an agreement. *E.g.*, *Kamps*, 217 B.R. at 844 ("Rule 4008 of the Federal Rules of Bankruptcy Procedure governs the timing for a hearing on a reaffirmation agreement."). Nothing in Rule 4008 abrogates the 11 U.S.C. § 524(c)(1) requirement that a debtor make a reaffirmation agreement before discharge.

Accordingly, the court does not find cause to reopen the Debtors' bankruptcy case to file

---

[3] Contrary authority does exist. For example, in *Chrysler Financial Co., LLC v. Diaz (In re Diaz)*, No. 00-4397, 2001 U.S. Dist LEXIS 1139 (E.D. Pa. Feb. 5, 2001), the district court rejected the creditor's argument that it did not have a reaffirmation agreement with the debtor after discharge because it did not utilize the provisions of § 524(c); rather, the parties had effected an informal "retain and pay" whereby the debtor continued to make payments on a vehicle for about two years and the creditor declined to exercise its foreclosure rights. When the debtor fell behind in post-discharge payments, the creditor repossessed the vehicle without notice. *Id.* at *4. Despite the fact that no written agreement was ever entered, no disclosures or admonitions were made, and no written document was ever executed, the court approved a nunc pro tunc reaffirmation agreement on the basis that the requirements of § 524(c) were met to confine overreaching creditors from post-discharge collection activity – not to hamstring debtors. *Id.* at *18. This court does not believe that a reaffirmation agreement can be executed without meeting the requirements of § 524(c), and even if a nunc pro tunc agreement was otherwise appropriate, the § 524(c)(2) requirement that a debtor receive the disclosures set forth in § 524(k) before executing the reaffirmation agreement would not be possible.

8

reaffirmation agreements after entry of the Debtors' discharge because any agreement the Debtors' might file would not be enforceable.[4]

### III. CONCLUSION

For the above-stated reasons, the court will deny the Debtors' motion to reopen their bankruptcy case. A separate order is attached pursuant to Fed. R. Bankr. P. 9021.

---

[4] When a debtor is having difficulty executing a reaffirmation agreement before the entry of the debtor's discharge, the debtor may – pursuant to Fed. R. Bankr. P. 4004(c)(2) – request the entry of the debtor's discharge be delayed. *E.g.*, *Graham*, 297 B.R. at 700 ("In a case such as the Debtors', whereby they wish additional time in which to enter into a reaffirmation agreement with a creditor, the proper procedure is the filing of a motion to defer the court's entry of the discharge order for thirty days pursuant to Federal Rule of Bankruptcy Procedure 4004(c)(2) . . . . The purpose of this Rule is to allow debtors 'additional time to negotiate reaffirmation agreements given that they are not enforceable if entered into post-discharge.' "); 9 *Collier on Bankruptcy*, ¶ 4004.04[9] (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev. 2006) ("The purpose of this provision is to permit the debtor additional time to decide whether to reaffirm all or part of a debt . . . .").